b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

DAVID DIXON,                    CIVIL ACTION 1:19-CV-01471
Plaintiff

VERSUS                          JUDGE DRELL

JOSEPH BARR, ET AL.,
Defendants                      MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Joseph Barr ("Barr") and Warden Marcus Myers ("Myers") (substituted for Warden Sandy McCain).  ECF No. 27.  Because Plaintiff stated a claim against Barr for the malicious use of excessive force, Defendants' Motion to Dismiss (ECF No. 27) should be DENIED as to Barr.  Because Warden Myers (in his official capacity) is immune from suit for money damages, Defendants' Motion to Dismiss (ECF No. 27) should be GRANTED as to Warden Meyers.

## I. Background

Plaintiff David Dixon ("Dixon") filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and supplemental state law claims.  Dixon alleges that, while he was confined in the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, in November 2018, he was subjected to the use of excessive force, was injured by a defective hydraulic jail door, and was denied timely medical care, resulting in the partial amputation of a finger.

The named Defendants are Warden Sandy McCain,[1] Joseph Barr ("Barr") (a deputy employed at RLCC), Kathy Gremillion, LPN (employed in the medical department at RLCC), Heather Cormier, NPC (employed in the medical department at RLCC), and Captain Stephen Coody (a corrections officer employed at RLCC). Because a Suggestion of Death (ECF No. 34) was filed for Warden McCain, Warden Marcus Myers (in his official capacity) is substituted as a Defendant for Warden McCain pursuant to Fed. R. Fed. P. 25(d).[2]

Dixon alleges that, on November 29, 2018, Officer Barr rushed past Dixon and "maliciously and intentionally" knocked Dixon to the ground. ECF No. 41-3 at ¶ 6. Dixon grabbed a door frame to stop his fall and sustained a severe injury to the tip his right middle finger when the defective hydraulic jail door slammed shut on him, crushing his fingertip. ECF No. 41-3 at ¶¶ 7-8. Dixon alleges the hydraulic door had been broken and malfunctioning for a long while, and that several other inmates have been injured by it. ECF No. 41-3 at 8.

Dixon alleges he waited seven to eight hours for Gremillion and Cormier to have him transported to the hospital, during which time his wound was not cleaned

---

[1] A Suggestion of Death was filed (ECF No. 34) and Warden Sandy McCain was terminated as a Defendant by the Clerk of Court. Contrast *Gulley v. Iweka*, 2016 WL 4370029, at *4 (D. Conn. 2016) ("To date, no motion for substitution of parties has been filed. Because more than ninety days have passed since the filing of the suggestion of death, the case is dismissed as to defendant Deputy Warden Iweka pursuant to Rule 25(a), Fed. R. Civ. P.").

[2] A Motion for Substitution of Warden McCain in his individual capacity has not yet been filed. *See In re Baycol Products Litigation*, 616 F.3d 778, 788 (8th Cir. 2010) (citing 6 James Wm. Moore, et al., *Moore's Federal Practice* § 25.12(3) (3d ed. 2010)) ("In the typical case, the proper party would be 'the representative of the decedent's estate who has been appointed under state law.'").

or prepped in any way.  As a result, Dixon's right middle finger had to be amputated "at the first knuckle."  ECF No. 41-3 at ¶¶ 9-12.

Dixon further contends that, after he returned from hospital, he was denied his prescribed pain medication by the RLCC Medical Officers and Guards until December 3, 2018.[3]  ECF No. 41-3 at ¶¶ 13-15.  Dixon claims he was again denied pain medication on December 5, 2018.  ECF No. 41-3 at ¶ 16.  On December 6, 2018, Gremillion and Cormier began providing and charging Dixon for Ibuprofen.  ECF No. 41; ECF No. 41-3 at ¶ 17.  Dixon further alleges the Gremillion and Cormier only changed his bandages and cleaned his wound one time between the surgery and December 9, 2018, despite the doctor's instructions to the contrary.  ECF Nos. 41; 41-3 at ¶¶ 18-20.  Dixon contends that, when they changed his bandages, Gremillion, Cormier, and Coody did so in a rough manner.  ECF No. 41; ECF No. 41-3 at ¶ 18.  Dixon contends that Gremillion, Cormier, or Coody "stabbed" Dixon's injured finger with a pair of scissors on one occasion.  ECF No. 41; ECF No. 41-31 at ¶ 19.

Dixon was released from prison on December 24, 2018.  ECF No. 1 at ¶ 21. Subsequently, due to infection, his nail bed had to be removed.  ECF No. 1 ¶ 23.

Dixon seeks damages, including punitive damages, pursuant to 42 U.S.C. § 1983 and La. C.C. arts. 2315, 2317, and 2322.

---

[3] At one point, a guard gave Dixon Ibuprofen and an ice pack.  ECF No. 41-3, ¶ 14.

Barr and McCain filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a viable claim. (ECF No. 15).[4] In response, Dixon filed an Amended Complaint (ECF No. 19). Barr and McCain (now Myers) then filed a second Motion to Dismiss. ECF Nos. 27, 30. Dixon opposes that Motion. ECF No. 29. Because the second Motion to Dismiss supesedes the first, Defendants' first Motion to Dismiss was denied as moot.

Dixon next filed a Motion for Leave to File a Second Amended Complaint (ECF Nos. 39, 41) that was granted in part. Three Defendants were added: Kathy Gremillion, LPN as Medical Officer 1; Heather Cormier, NPC as Medical Officer 2; and Captain Stephen Coody as Guard Officer 1. Warden Marcus Myers (in his official capacity) was substituted for former Warden Sandy McCain pursuant to Fed. R. Civ. P. 25(d). ECF No. 39 at p. 3.

The second Motion to Dismiss filed by Barr and McCain (now Myers) (ECF No. 27) is now before the Court.

## II.  Law and Analysis

In their Motion to Dismiss (ECF No. 27), Defendants Barr and Myers contend that Dixon's Amended Complaint fails to state a claim on which relief may be granted. Defendants argue that: (1) Dixon fails to state a claim against Barr and Myers for deliberate indifference to his serious medical needs; (2) fails to state an Eighth Amendment claim against Barr; and (3) fails to state a claim against Myers for supervisory liability under § 1983.

---

[4] Because Defendants' second Motion to Dismiss superseded their first Motion to Dismiss, the first Motion to Dismiss (ECF No. 15) has been denied as moot.

4

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

### A.    Dixon fails to state a claim against Barr for deliberate indifference to serious medical needs.

Defendants contend Dixon fails to state a claim against Barr for denial of medical care. Dixon has not actually alleged that Barr denied him medical care. Dixon simply alleges that Barr used excessive force. Therefore, Defendants' Motion to Dismiss Dixon's claim against Barr for denial of medical care should be denied as moot.

### B.    Dixon states a valid claim against Barr for use of excessive force.

Dixon alleges that Barr intentionally knocked him down. A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's

necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 839.

In *Hudson v. McMillian*, 503 U.S.1 (1992), the Supreme Court discussed the *Whitley v. Albers*, 475 U.S. 312 (1986) approach to evaluation of excessive force claims, and found the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *See Hudson*, 503 U.S. at 6-7. The *Hudson* court further held that, whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 6-7; *see also Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).

The United States Supreme Court stated, in *Kingsley v. Hendrickson,* 576 U.S. 389, 402 (2015), that a court should look to such factors as: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) whether force was applied in

a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. In the excessive force context, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *See Hudson,* 503 U.S. at 9. However, the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *See Hudson,* 503 U.S. at 9. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent. Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *See Bender v. Brumley*, 1 F.3d 271, 278 (5th Cir. 1993) (quoting *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)). A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton. The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Bender*, 1 F.3d at 278, n. 6 (quoting *Hudson*, 503 U.S. 1).

7

Dixon alleges that Barr "maliciously and intentionally" knocked him down as Barr rushed past him, and that a serious injury resulted. Dixon does not allege why Barr shoved him, or that Barr often or habitually used excessive force on inmates. Nor does Dixon allege that the shove was the sole cause of his injury. On the other hand, Barr has not denied shoving Dixon, and has not alleged or shown that he used force during a "good faith effort to maintain or restore discipline." Instead, Barr claims qualified immunity, and argues that Dixon has not alleged sufficient facts to show that Barr's conduct violated Dixon's clearly established constitutional rights.

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011), cert. den., 567 U.S. 905 (2012). "To defeat a claim of qualified immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017), cert. den., 138 S. Ct. 739 (U.S. 2018) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (*abrogated on other grounds by Kingsley*, 5776 U.S. at 400-401). The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). District courts have discretion over the order of the analysis and may make step one optional when immunity is required at step two. *See Morgan*, 659 F.3d at 385

(citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)); *see also* Turner *v. Lieutenant Driver,* 848 F.3d 678, 685 (5th Cir. 2017).

The first inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If it is established that the defendants participated in constitutionally impermissible conduct, the defendants may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Hope*, 536 U.S. at 739 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The salient question the court must ask is whether the state of the law at the time of the alleged incident gave the officers fair warning that their alleged conduct was unconstitutional. *See Hope*, 536 U.S. at 741 (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

Thus, if the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6). *See Shipp v. McMahon*, 234 F.3d 907, 911-912 (5th Cir. 2001), cert. den., 532 U.S. 1052 (2001) (overruled on other grounds in *McClendon v. City of Columbia*, 305 F. 3d 314, 329 (5th Cir. 2002)); *see also Warnock v. Pecos County, Tex.*, 116 F.3d 776, 780 (5th Cir. 1997).

At the time of the incident, Dixon had a well-established right to not be subjected to the use of excessive force. *See Whitley v. Albers*, 475 U.S. 312 (1986).

Dixon alleges that Barr maliciously and intentionally knocked Dixon to the ground as he rushed past him, and that Dixon sustained a serious injury when grabbed the defective door to stop his fall.  Viewing the facts alleged in the light most favorable to the complaint, Dixon has alleged that Barr violated Dixon's Eighth Amendment right against excessive force.  Therefore, Barr's defense of qualified immunity will not sustain his Motion to Dismiss (ECF No. 27).

### C.   Dixon's claims against Warden Meyers are barred by the Eleventh Amendment.

Dixon alleges that Warden McCain failed to properly maintain the malfunctioning  hydraulic door, resulting in injuries to others as well as to Dixon. ECF No. 41-3 at 4.  Dixon also contends that Warden McCain has supervisory liability for the acts of his employees.  Dixon contends Warden Meyers is now liable to him, in McCain's stead, for monetary damages under both § 1983 and state law. Warden Meyers in his official capacity has been substituted for Warden McCain.

The Raymond Laborde Correctional Center is a state prison operated by the Louisiana Department of Public Safety and Corrections.   The Louisiana Department of Public Safety and Corrections is an arm of the State of Louisiana and is entitled to Eleventh Amendment immunity.  *See Anderson v. Phelps*, 655 F. Supp. 560, 563-64 (M.D. La. 1985); *see also Courville v. Corrections Corp. of America*, 2015 WL 3651299 (W.D. La. 2015); *Loya v. Texas Dept. of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989); *Rowe v. Summers*, 1998 WL 71645, *2 (E.D. La. 1998); *Hultberg v. State*, 1998 WL 30288, *4 (E.D. La. 1998); *Brown v. Bonvillain*, 1997 WL 162155, *3 (E.D. La. 1997).  Warden Meyers is employed by the Louisiana

Department of Public Safety and Corrections. Therefore, a suit against Warden Meyers in his official capacity is a suit against the State of Louisiana.

The Eleventh Amendment to the U.S. Constitution bars all suits in law or equity against an unconsenting state. *See Neuwirth v. Louisiana State Board of Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988). Under La. R.S. 13:5106, the state of Louisiana has not waived her immunity under the Eleventh Amendment from suit in federal court. Thus, § 1983 does not provide a federal forum for a litigant seeking monetary recovery against a state official acting in an official capacity, because a state official in his official capacity is seen to be acting on behalf of the State and is not seen to be a "person" within the meaning of § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).[5] The principle of Eleventh Amendment immunity also applies to state-law claims brought in federal court under pendent jurisdiction. *See Hayes v. Department of Public Safety & Corrections*, 2017 WL 4295142, at *2 (W.D. La. 2017) (citing *Pennhurst State School & Hospital v Halderman*, 465 U.S. 89, 121 (1984)); *Pham v. University of Louisiana at Monroe,* 2016 WL 3172882, at *5 (W.D. La. 2016), *aff'd*, 712 Fed. Appx. 360 (5th Cir. 2017), *cert. den.*, 138 S. Ct. 1548 (U.S. 2018) (citing *Wilson v. UT Health Center*, 973 F.2d 1263, 1271 (5th Cir. 1992), *cert. den.*, 507 U.S. 1004 (1993)). A claim for prospective injunctive or declaratory relief asserted against a state official in an official capacity is not prohibited under the Eleventh

---

[5] An official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will*, 491 U.S. at 71).

Amendment, because such a claim is not treated as a claim against the State. *See Will*, 491 U.S. at 71 n. 10.

Because Dixon has asked only for monetary damages that are not recoverable against Warden Meyers in this Court, Dixon's action against Warden Meyers, under both § 1983 and state law, should be dismissed.

III.    <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED THAT Defendants' Motion to Dismiss (ECF No. 27) Dixon's claim against Barr for denial of medical care should be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 27) Dixon's § 1983 claim against Barr for use of excessive force should be DENIED.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 27) Dixon's § 1983 and state law claims against Warden Meyers be GRANTED and that Dixon's action against Warden Meyers be DISMISSED WITH PREJUDICE.

SIGNED on Thursday, February 4, 2021.

Joseph H.L. Perez-Montes
United States Magistrate Judge