U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 14 2022

TONY R. MOORE, CLERK
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **DAVID DIXON** | **CASE NO. 19-cv-1471** |
| -vs- | **JUDGE DRELL** |
| **JOSEPH BARR ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## RULING AND ORDER

Before the Court is a Motion to Dismiss, (Doc. 55), and a Motion for Summary Judgment, (Doc. 63), filed by the Defendants. After thoroughly reviewing the record and the law, the Motion to Dismiss is **MOOT** and the Motion for Summary Judgment is **MOOT in part**, **GRANTED in part**, and **DENIED in part**.

### I.  Background

Plaintiff David Dixon ("Dixon") was incarcerated at the Raymond Laborde Correctional Center ("RLCC") on November 29, 2018. Around 9pm on that date, Dixon's presence was requested because an individual was interested in purchasing a purse Dixon previously made. While Dixon was waiting for an escort, Dixon alleges that Officer Joseph Barr ("Barr") rushed past Dixon "maliciously and intentionally" knocking Dixon to the ground of the jail. (Doc. 47, ¶6). Dixon reached for a nearby door frame to stop his fall. However, that door frame supported a hydraulic door, and the door malfunctioned resulting in the traumatic amputation of the tip of Dixon's middle finger.

1

Dixon alleges that the hydraulic door had been malfunctioning for a substantial period of time and has injured other inmates. This fact forms the basis of Dixon's claims against Warden W.S. "Sandy" McCain ("Warden McCain") as custodian.

After Dixon's finger was traumatically amputated, Dixon alleges that he was returned to his cell to wait for approval for an emergency trip to Rapides Regional Hospital and that while waiting for approval he was denied medical support from the medical staff working at RLCC, namely Kathy Gremillion, LPN ("Gremillion") and Heather Cormier, NPC[1] ("Cormier"). He further claims that because the wound had not been cleaned by either Gremillion or Cormier, the surgical doctor had no choice but to amputate Dixon's finger to the knuckle.

After returning from the hospital, Dixon further alleges that he was denied medical support from Gremillion, Cormier, and Capt. Stephen Coody ("Coody"). Specifically, he claims that he was denied pain relief as prescribed by Doctor McCabe of Rapides Regional. He also claims that his amputation was not cleaned in accordance with the instructions of Dr. McCabe and was handled roughly.

As it pertains to pain management, Dixon was administered Morphine at the hospital prior to his return to RLCC at 5 P.M. on November 30, 2018. (Doc. 63-15, Exhibit M). His discharge paperwork included a prescription for 600 mg of Ibuprofen every four hours as needed and 50 mg of Tramadol every five hours. (Doc. 63-14,

---

[1] Non-Physician Clinician, also referred to as Nurse Practitioners and Physician Assistants.

2

Exhibit L). However, RLCC physicians are not obligated to follow the recommendations or instructions of outside providers according to Regulation B-06-001 of the Louisiana Department of Corrections Health Care Manual. (Doc. 63-16, Exhibit N). With this authority, Cormier, an NPC, ordered the discontinuation of Tramadol upon Dixon's return to the RLCC. Id. The following day Cormier altered Dixon's Ibuprofen regiment from 600 mg every four hours as needed (600mg x 24/4 = 3600 mg/day) to 800 mg three times a day (800x3 = 2400 mg/day) and administered one 60 mg dose of Toradol. (Doc. 63-17, Exhibit O). The defendants have not provided any medical notes or changes for December 2, 2018, thus we assume Dixon was allotted 800 mg of Ibuprofen three time a day. The following day, the RLCC doctor[2] prescribed the narcotic pain medication Norco three times a day. (Doc. 63-19, Exhibit Q). Dixon received Norco three times on December 3 and 4, and four times on December 5. (Doc. 63-20, Exhibit R).

As it pertains to the cleaning and handling of Dixon's amputated finger, Dixon further claims that one of either Cormier, Gremillion, or Coody expressed a disregard for the medical recommendations or instructions of Dr. McCabe and stabbed the amputated finger with a pair of scissors while changing Dixon's bandages.

Subsequent to these events, Dixon filed suit pursuant to 42 U.S.C § 1983 and various Louisiana torts naming Barr and Warden McCain, seeking special, general and punitive damages. (Doc. 1). Barr and Warden McCain filed a motion to dismiss.

---

[2] The name of the RLCC doctor is not provided by either party, and the supporting document, Doc. 63-19 Exhibit Q, does not present a legible signature. However, it does not match the signature of Cormier found on Doc. 63-16 Exhibit N.

3

(Doc. 27, 30). However, Warden McCain passed away and was replaced by Warden Marcus Meyers ("Warden Meyers"). We denied the motion to dismiss as to Barr and granted with prejudice the motion to dismiss as to Warden Meyers. (Doc. 45, 52). Dixon then moved to amend his complaint to (1) replace Warden McCain with Warden Meyers, and to (2) include as a defendant the State of Louisiana through the Department of Public Safety and Corrections ("LA DPSC"). (Doc. 41). Dixon's motion to amend to replace Warden McCain with Warden Meyers was mistakenly granted as Warden Meyers had already been dismissed with prejudice. (Doc. 46). The court further denied the inclusion of the LA DPSC on Eleventh Amendment grounds.

The proposed amended complaint was unfortunately allowed to be filed without redaction of the claims against the State of Louisiana, which had been denied in the order. (Doc. 47). In response, LA DPSC and Warden Meyers in his official capacity filed a separate and renewed motion to dismiss pursuant to Rule 12(b)(1), and Warden Meyers in his individual capacity filed a motion to dismiss pursuant to Rule 12(b)(6). (Doc. 55). In addition, all defendants, including LA DPSC and Warden Meyers, filed a motion for summary judgment. (Doc. 63). Considering the confusion in the record, the motion for dismissal (Doc. 55) and the motion for summary judgment as it pertains to LA DPSC and Warden Meyers (Doc. 63) were undoubtedly filed by these parties out of an abundance of precaution. Nonetheless, we observe the motions to be **MOOT**. LA PDSC is **NOT** a party and Warden Meyers has already been dismissed with prejudice. This leaves only the claims against Barr, Coody, Cormier, and Gremillion.

4

II.     **Standards of Review**

    a. **Motion for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

III.    **Law and Analysis**

    a. **Barr**

Dixon alleges that Officer Barr rushed past Dixon "maliciously and intentionally" knocking Dixon to jail floor. (Doc. 47, ¶6). Dixon then describes

5

reflexively grabbing the hydraulic door frame as the hydraulic door was closing. Defendants moves for summary judgment claiming Barr cannot be liable because he was not there at the time of the incident.[3] Defendants further claim that even if Barr were present, it is not plausible for him to have the knowledge or foresight that Dixon would reach for or grab the door and that the door would malfunction.

To raise such a claim under § 1983, first, the constitutional deprivation must be, objectively, sufficiently serious, and second, the defendant prison official must have allegedly acted with "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference requires a showing that the defendant government "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw the inference." Id. at 837.

We agree Barr could not have foreseen Dixon's future actions to reach for or grab the door frame. Even if Bar could have foreseen Dixon's future actions, Barr could not have foreseen that the door would malfunction because, as the Defendants have shown undisputed, the door was without defect or malfunction for at least five years prior to Dixon's accident. (Doc. 63-7 Exhibit E). As a result, we cannot say that Barr knew Dixon faced a substantial risk of serious harm. At most Dixon's claim

---

[3] Barr claims that he was not present, and that Dixon has mistaken someone else for him. However, the affidavit of Lt. Stephen Perry suggest Dixon may not be mistaken. (Doc. 63, Exhibit B). Thus, whether Barr was present or not is unclear from the record.

6

against Barr is for negligence, and negligence does not satisfy the deliberate indifference standard under § 1983. See Hare, 74 F.3d at 649-650.

Negligence may satisfy a state tort law claim against Barr, but against the undisputed record that the door in question did not malfunction for years prior to the incident, Dixon cannot even claim that Barr could have foreseen the risk imposed by the door. If a risk is not foreseeable, then there is no duty imposed to prevent harm arising from the risk. Accordingly, the federal and state law claims against Barr will be dismissed.

### b. Coody

Dixon implicates Coody as liable for the denial of post amputation treatment, the denial of prescribed pain medication, and purposely stabbing Dixon's finger while changing medical bandages. (Doc. 47, ¶¶ 13-14, 16, 18-20). The Defendants argue that Coody is a guard without authority to provide any medical services and cannot be liable for damages resulting from any alleged denial of pain medication or handling of Dixon's finger. Again, without opposition as to why Coody should be liable for the denial of pain medication or the medical handling of Dixon's finger, we agree with the Defendants. By virtue of his position and without more from Dixon as to why Coody should be liable, the federal and state law claims against Coody will be dismissed.

### c. Cormier and Gremillion

Along with Coody, Dixon also implicates Cormier and Gremillion for the denial of post amputation treatment, the denial of prescribed pain medication, and for purposely stabbing Dixon's finger while changing medical bandages.

7

In response to the alleged denial of post amputation treatment, Defendants have shown that Dixon was sent to the infirmary immediately after his injury, that the wound was cleaned and dressed with a pressure bandage, and that Dixon was given a tetanus shot, antibiotics, Bactrim, and an ice pack. (Doc. 63-10, 11, 12, Exhibits H, I, J). In the absence of any opposition to Defendants' motion, we will dismiss Dixon's claim against Cormier and Gremillion as it pertains the alleged denial of post amputation treatment. In response to the alleged stabbing of Dixon's finger, they have shown that neither changed Dixon's bandages or stabbed his finger and have shown that it was the prison doctor who was changing Dixon's bandages at the time Dixon alleges that his finger was stabbed. In the absence of any opposition to Defendants' motion, we will also dismiss all of Dixon's claim against Cormier and Gremillion for the alleged finger stab. Dixon's claim that adequate pain medication was denied is another matter.

The Eighth Amendment obligates the government "to provide medical care" to inmates in its custody. Estelle v. Gamble, 429 U.S. 97, 103 (1976). The "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." Id. To raise such a claim, "[f]irst, the deprivation alleged must be, objectively, sufficiently serious," and second, the defendant prison official must have allegedly acted with "deliberate indifference to inmate health or safety". Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation omitted). This of course is balanced by an understanding that deliberate indifference "is a stringent standard of fault." Connick v. Thompson, 563 U.S. 51, 61, (2011) (internal quotation marks and citation

8

omitted). "Mere negligence in diagnosing or treating a medical condition does not amount to deliberate indifference." Campbell v. Brown, 756 F. App'x 386, 389 (5th Cir. 2018). "Nor does a prisoner's disagreement with a particular course of treatment or a doctor's professional decision not to pursue additional treatment options."

Defendants do not argue that Dixon's claim for the denial of pain medication fails to present a sufficiently serious deprivation, and Fifth Circuit precedent supports the proposition generally. See, e.g., Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (finding defendant presented a viable Eighth Amendment claim for the denial of prescribed medication to alleviate pain when the defendant was aware that such a denial would result in a substantial risk of harm to inmate's health).

Instead, Defendants claim to have provided Dixon with adequate pain medication. In other words, we read Defendant's position to be that Defendants did not act with deliberate indifference. Deliberate indifference requires a showing that the defendant prison "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw the inference." Id. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Gates v. Cook, 376 F.3d 323, 333 (5th Cir. 2004) (citing Framer at 842).

9

To this Court's knowledge, the Fifth Circuit has not fully defined what constitutes a "substantial risk of serious harm." Id. Notably, the pain Dixon suffered was not a symptom of a declining medical condition that needed attention. Nonetheless, the pain caused anguish and the Fifth Circuit recognizes that "mental health needs are no less serious than physical needs." Gates v. Cook, 376 F.3d 323, 343 (5th Cir. 2004) (affirming a district court finding that Death Row inmates were subject substantial risk of serious harm based on mental health condition on Death Row). "[C]onditions of inadequate mental health care… do present a risk of serious harm to the inmates mental and physical health." Id. See also Harper v. Showers, 174 F.3d 716, 720 (5th Cir.1999) (holding that an inmate stated a nonfrivolous claim under § 1983 in complaining that he was placed in cells next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires, resulting in his loss of sleep for days at a time); Partridge v. Two Unknown Police Officers of City of Houston, Texas, 791 F.2d 1182, 1187 (5th Cir.1986) ("A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills.") (compiling cases from the 5th, 3rd, 4th, and 10th Circuits). Accordingly, we find that Fifth Circuit precedent supports a finding that severe pain, even if defined only as a psychological ill affecting mental health, can constitute a substantial risk of serious harm.

Although not binding, we find support for this conclusion from the Ninth Circuit.

> A serious medical need exists if the failure to treat a prisoner's condition
> could result in further significant injury or the unnecessary and wanton

10

> infliction of pain. Either result is not the type of routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.

McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quotation marks and citations omitted) (adopted by Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996); Sarah v. Thompson, 109 F. App'x 770, 771 (6th Cir. 2004)).

Considering the facts in the light most favorable to the nonmoving party, we find that Defendants knew Dixon (1) received Morphine for pain while at the Rapides Regional and (2) was prescribed by the treating physician 600 mg of Ibuprofen every four hours as needed and 50 mg of Tramadol every five hours. It is also generally understood that Ibuprofen treats mild to moderate pain whereas Tramadol is used for higher levels of pain. See, e.g., Tramadol HCL – Uses, Side Effects, and More, https://www.webmd.com/drugs/2/drug-4398-5239/Tramadol-oral/Tramadol-oral/details, last viewed Nov. 9, 2021. It can be inferred from this that the Defendants were subjectively aware of the potential for severe pain. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).

Although aware of the potential for severe pain, Cormier discontinued the Tramadol and altered Dixon's allotted Ibuprofen prescription to 800 mg three times

11

a day or every eight hours. This is of course not an outright denial of pain medication. Easter v. Powell, 467 F.3d 459, 464 (5th Cir.2006). At the same time, this is clearly not a reasonable substitution for the treatment of severe pain.

The following day December 1, Dixon received in addition to the new Ibuprofen regimen a single injection of Toradol after lunch. It is generally understood that Toradol, like Tramadol, is a short-term treatment for pain. See, e.g., Toradol Tablet – Uses, Side Effects, and More, https://www.webmd.com/drugs/2/ drug-57954/Toradol-oral/details, last viewed Nov. 9, 2021. No additional Toradol was administered that day or the following. The single administration of a short-term pain management solution is not a substitution for the continuing administration of another short-term pain management option. Thus, it can be inferred that Defendants were subjectively aware of the continuing potential for severe pain after the benefit of Toradol diminished. On December 3, the prison doctor, presumably over Cormier who is only a NPC, authorized the administration of Norco three times a day for three days. It is generally understood that Norco is used to treat severe pain and, therefore, provides a reasonable alternative to Tramadol. See, e.g., Norco-Uses, Side Effects, and More, https://www.webmd.com/drugs/2/drug-63/norco-oral/details, last viewed Nov. 9, 2021.

Although mere disagreement with treatment is insufficient and although medical professionals disagree among themselves, Dixon is not alleging a mere disagreement with the course of treatment provided. Rather, Dixon alleges that the Defendants failed to follow a prescribed course of treatment or to follow a reasonable

12

substitution of that prescribed course of treatment. See Estelle, 429 U.S. 97, 104–05, (1976) (noting that deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); see also Stewart v. Murphy, 174 F.3d 530, 535, 537 (5th Cir. 1999) (finding no deliberate indifference when a prison doctor refused a recommendation to transfer inmate to another facility for physical therapy and wound care because the prison doctor ordered routine physical therapy and wound care in the alternative).

According to Dixon's allegations, Defendants refused to provide prescribed medication to, further refused to provide a reasonable alternative medication to, ignored the complaints of, intentionally mistreated, and engaged in a wanton disregard for a patient within custody. Domino v. Texas Dep't of Crim. Just., 239 F.3d 752, 756 (5th Cir. 2001). Defendants' alleged conduct may meet the deliberate indifference threshold.

However, we also note that the Defendant's motion is notably void of any rationale supporting (1) Cormier's decision (or authority as a NPC under Louisiana law) to discontinue Tramadol and to effectively reduce Ibuprofen as prescribed by an outside physician, (2) Cormier's decision to administration of a single dose of Toradol as an alternative to the outside physician's prescribed treatment plan, (3) either Cormier or Gremillion's decision to not administer additional pain medication of any type, or (4) the physician's decision prescribe Norco. Evidence and arguments along these lines may serve to rebut Dixon's claim that the Defendants failed to follow a

13

reasonable substitution of Dixon's proscribed treatment plan. Considering the breadth of this motion to dismiss and the number of defendants included, we will presently deny the motion as it pertains to Dixon's medical treatment claims against Cormier and Gremillion alleging a denial of reasonable pain medication and treatment because the factual record is incomplete to support granting the motion on this limited basis. Defendants are not precluded from filing another motion to summary judgment with further evidence and arguments pertaining to this remaining claim.

### IV. Conclusion

For the reasons explained above, it is hereby **ORDERED** that the Motion to Dismiss, (Doc. 55), is **MOOT** as it pertains to the State of Louisiana and Warden Meyers in his individual capacity. It is further

**ORDERED** that the Motion to Dismiss, (Doc. 55), is **GRANTED** as it pertains to Dixon's claims against Warden Meyers in his official capacity. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **MOOT** as it pertains to the State of Louisiana and Warden Meyers. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **GRANTED** as it pertains to Dixon's claims against Officer Barr and Officer Coody. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **GRANTED** as it pertains to Dixon's claims against Cormier and Gremillion alleging a denial of post amputation care and stabbing Dixon's finger while changing bandages. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **DENIED**, without prejudice, as it pertains to Dixon's claims against Cormier and Gremillion alleging a denial of reasonable pain medication and treatment.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 13th day of January 2022.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DAVID DIXON

-vs-

JOSEPH BARR ET AL

CASE NO. 19-cv-1471

JUDGE DRELL

MAGISTRATE JUDGE PEREZ-MONTES

## JUDGMENT

For the reasons expressed in the court's memorandum ruling, also issued this day, it is hereby

**ORDERED** that the Motion to Dismiss, (Doc. 55), is **GRANTED** as it pertains to Dixon's claims against Warden Meyers in his official capacity. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **MOOT** as it pertains to the State of Louisiana and Warden Meyers. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **GRANTED** as it pertains to Dixon's claims against Officer Barr and Officer Coody. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **GRANTED** as it pertains to Dixon's claims against Cormier and Gremillion alleging a denial of post amputation care and stabbing Dixon's finger while changing bandages. It is further

**ORDERED** that the Motion for Summary Judgment, (Doc. 63), is **DENIED**, without prejudice, as it pertains to Dixon's claims against Cormier and Gremillion alleging a denial of reasonable pain medication and treatment.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 13th day of January 2022.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT